UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

| | |
|---|---|
| **ANSWERS IN GENESIS, INC.** | Case No. 2:22-cv-00080 |
| -and- | |
| | Judge David L. Bunning |
| **CROSSWATER CANYON, INC.** | Magistrate Judge Candace J. Smith |
| Plaintiffs, | |
| | **FIRST AMENDED COMPLAINT FOR** |
| -v- | **BREACH OF CONTRACT,** |
| | **DECLARATORY JUDGMENT, BAD** |
| **BROTHERHOOD MUTUAL INSURANCE** | **FAITH, AND OTHER RELIEF** |
| **SERVICES, LLC** | |
| | |
| -and- | **JURY DEMAND ENDORSED HEREON** |
| | |
| **BROTHERHOOD MUTUAL INSURANCE** | |
| **COMPANY** | |
| **6400 Brotherhood Way** | |
| **Fort Wayne, IN  46825** | |
| | |
| Defendants. | |

Plaintiffs Answers in Genesis, Inc. ("AIG") and Crosswater Canyon, Inc. ("Crosswater Canyon") (collectively, "Plaintiffs"), make the following First Amended Complaint against Defendants Brotherhood Mutual Insurance Services, LLC ("Brotherhood LLC") and Brotherhood Mutual Insurance Company ("Brotherhood Company") (collectively, "Defendants").

## INTRODUCTION

In the wake of the COVID-19 pandemic, lawsuits have been filed throughout the country seeking insurance coverage for lost income and extra expense, due to both the impact of COVID itself and various government orders in response to the pandemic. The crucial issue in nearly

every one of these cases is whether the loss involves physical loss of or damage to property. This suit differs from nearly all of those suits.

Here, AIG's insurance coverage for interruption by civil authority does *not* require any such physical loss or damage. Instead, AIG's insurance policy provides coverage for lost income and extra expense caused by an order of civil authority that prohibits people from accessing the insured premises and results in a complete interruption of operations. No physical damage requirement accompanies this coverage. So although Plaintiffs also seek insurance coverage from Defendants due to the physical loss of or damage to their properties, and believe that Kentucky law allows such a claim, they also assert a claim notably different from most COVID-based claims.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff AIG is a non-profit corporation that is incorporated in the state of Kentucky, is headquartered in the state of Kentucky, and has its principal place of business located in Petersburg, Kentucky. AIG owns and operates the Creation Museum, a 75,000 square foot museum in Petersburg, Kentucky with exhibits, botanical gardens, a planetarium, zoo, zip line adventure course, and other attractions. During the time it has been open, the Creation Museum has welcomed millions of guests.

2. Plaintiff Crosswater Canyon is a non-profit corporation that is incorporated in the state of Kentucky, is headquartered in the state of Kentucky, and has its principal place of business located in Petersburg, Kentucky. Crosswater Canyon owns and operates the Ark Encounter theme park in Williamstown, Kentucky, which features a full-size Noah's Ark as well as a zoo, zip lines, and a timber frame restaurant. During the time it has been open, the Ark Encounter has also welcomed millions of guests.

3. Defendant Brotherhood LLC is a limited liability company that transacts business in the state of Kentucky, is incorporated in the state of Indiana, and is headquartered in Indiana.

4. Defendant Brotherhood Company is an insurance corporation that transacts business in the state of Kentucky, is incorporated in the state of Indiana, and is headquartered in Indiana.

5. Defendants issued a "Ministry*First* Commercial Multi-Peril Insurance Coverage" policy to AIG, policy number 16MEA0335239, with a policy period of 3/12/2020 to 3/12/2021 (the "AIG Policy"). AIG paid to Defendants a premium of $148,930.00 in consideration for the AIG Policy. The "Earning and Donations and Extra Expense Coverage Part" portion of the AIG Policy provides for coverage limits of $3,060,000 for earnings and donations and $3,100,000 for extra expense.

6. Defendants similarly issued a "Ministry*First* Commercial Multi-Peril Insurance Coverage" policy to Crosswater Canyon, policy number 16MEA0466954, with a policy period of 7/1/2019 to 7/1/2020 (the "Crosswater Canyon Policy"). Crosswater Canyon paid to Defendants a premium of $277,291.00 in consideration for the Crosswater Canyon Policy. The "Earning and Donations and Extra Expense Coverage Part" portion of the AIG Policy provides for coverage of $25,000,000 for earnings and expenses, $10,000,000 for loss of donations, and $10,000,000 for extra expense.

7. The AIG Policy and the Crosswater Canyon Policy will be collectively referred to as the "Insurance Policies."

8. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Specifically, Plaintiffs are both citizens of Kentucky, where they are incorporated and have their principal places of business. Defendant Brotherhood Company is a citizen of Indiana, where it is incorporated and has its principal place of business. Defendant Brotherhood LLC is an Indiana limited liability company and, as alleged in its Notice of Removal, none of its members are citizens of Kentucky. (Doc. # 1 at p. 2).

10. Defendants are subject to personal jurisdiction in Kentucky because they transact business there.

11. Venue is proper in this District because a substantial part of the events and/or omissions giving rise to the claims and damages asserted in this Complaint occurred in Boone County, Kentucky or relate to property located in Boone County, Kentucky, and Defendants' actions have caused and will continue to cause injury in Boone County.

## BACKGROUND

### A. Business Interruption Insurance Coverage and the COVID-19 Pandemic

12. Business interruption insurance is a type of insurance that covers loss that a business suffers due to an inability to use its property—either its own property, or the inability of visitors and customers to visit and use the property.

13. Faith-based organizations that rely heavily on in-person traffic to support themselves and their ministries often obtain specific business interruption coverage designed to provide coverage for earnings and donations that the organization would have received but for the fact that its business operations were interrupted, as well as the extra expenses incurred by the business as a result of the interruption of their operations.

14. Faith-based organizations that purchase this type of earnings, donations, and extra expense coverage have a reasonable expectation that coverage will apply if their business

operations are interrupted as a result of an unforeseen event, such as the presence of COVID-19 causing the loss of use of property, or a forced government shutdown of their properties as the result of a pandemic or other large-scale disaster.

### B. The AIG Policy[1]

15. For many years, AIG faithfully paid premiums to Defendants to obtain commercial multi-peril insurance coverage.

16. The AIG Policy provides a detailed schedule of the various premises covered under the AIG Policy, including the Creation Museum and all related buildings (*i.e.*, the museum building, the observatory, the gazebo, various pavilions, etc.) (*See* AIG Policy, Declarations at p. 3).

17. The AIG Policy includes a "Broadened Building and Personal Property Coverage Part" which provides that the AIG Policy covers "direct physical loss to covered property at the premises described on the **declarations** caused by a covered peril." (*Id.* at Form BCP-12B (4.5)). The "Special Perils Part," in turn, provides coverage for "direct physical loss unless the loss is limited or caused by a peril that is excluded." (*Id.* at Form BCP-85 (4.5)).

18. The AIG Policy includes a "Earnings and Donations and Extra Expense Coverage Part," which provides various coverages, including coverage for "covered perils," infectious diseases, and interruption by civil authority. (*Id.* at Form BCP-71 (4.5)).

19. With regard to these perils, the AIG Policy provides in part as follows:

> 1. **Covered Perils**: This includes direct physical loss to real or personal property located at premises described on the **declarations** . . . which loss is caused by a peril covered by:

---

[1] A true and accurate copy of the relevant portions of the AIG Policy are attached as **Exhibit A**. The entire policy is not being attached due to size, but has separately been provided to counsel for Defendants.

>      a.   the Perils Part shown on the **declarations** for this Coverage Part; or
>
>      b.   any other peril covered by this policy, with the exception of the Water Damage Coverage Part[.]
>
>   2.   **Infectious Diseases**: This includes loss caused by the interruption of **your** operations by an infectious disease acquired by **your** employees or staff.
>
>   3.   **Interruption by Civil Authority**: This includes loss caused by order of civil authority which prohibits **your** staff or scheduled event participants from accessing premises described on the **declarations**. Coverage for this peril will only apply in the event that such order of civil authority results in the complete interruption of **your** operations[.]

(*Id.*, Form BCP-71 (4.5), "Perils Covered").

   20.   The AIG Policy provides "Earnings and Donations" coverage in part as follows:

>   **We** cover the actual loss of **your earnings** and **your donation income** that **you** sustain, including but not limited to, **your tuition earnings**, **camp earnings**, and **rental earnings/value**. This coverage includes, but is not limited to, the actual loss that **you** sustain of **your** payroll and other continuing expenses that **you** normally incur during the course of your operations[.]

(*Id.*, Form BCP-71 (4.5), "Coverage Options").

   21.   It also provides "Extra Expense" coverage in part as follows:

>   **We** cover the necessary extra expenses that **you** incur to resume or continue **your** operations as nearly as practicable. **We** cover only the extra expenses that are necessary during the **restoration period**.

(*Id.*)

   C.   **The Crosswater Canyon Policy**[2]

   22.   Like AIG, Crosswater Canyon faithfully paid premiums to Defendants for several years to obtain commercial multi-peril insurance coverage.

   23.   The Crosswater Canyon Policy provides a detailed schedule of the various premises covered under the Crosswater Canyon Policy, including the Ark Encounter and all

---

[2] A true and accurate copy of the relevant portions of the Crosswater Canyon Policy are attached as **Exhibit B**. The entire policy is not being attached due to size, but has separately been provided to counsel for Defendants.

related buildings (*i.e.*, the ark building, dining hall, ticket sales building, animal barn, green house, various food dwellings, etc.) (*See* Crosswater Canyon Policy, Declarations at p. 2).

24. The Crosswater Canyon Policy includes a "Broadened Building and Personal Property Coverage Part" which provides that the Crosswater Canyon Policy covers "direct physical loss to covered property at the premises described on the **declarations** caused by a covered peril." (*Id.* at Form BCP-12B (4.1)). The "Special Perils Part," in turn, provides coverage for "direct physical loss unless the loss is limited or caused by a peril that is excluded." (*Id.* at Form BCP-85 (4.0)).

25. The Crosswater Canyon Policy also includes a "Earnings, Extra Expense, and Donations Coverage Part," which provides coverage for various perils, including coverage for infectious diseases and interruption by civil authority. (*Id.* at Form BCP-71 (1.1)).

26. With regard to these perils, the Crosswater Canyon Policy provides in part as follows:

> 1. **Covered Perils**: This includes direct physical loss to real or personal property located at premises described on the **declarations** . . . which loss is caused by a peril covered by:
>
>> a. the Perils Part shown on the **declarations** for this Coverage Part; or
>>
>> b. any other peril covered by this policy, with the exception of the Water Damage Coverage Part[.]
>
> 2. **Infectious Diseases**: This includes loss caused by the interruption of **your** operations by an infectious disease acquired by **your** employees or staff.
>
> 3. **Interruption by Civil Authority**: This includes loss caused by order of civil authority which denies **you** access to premises described on the **declarations**. This order must be a result of damages to property (other than property located at the described premises) caused by a covered peril.

(*Id.*, Form BCP-71 (1.1), "Perils Covered").

27. The Crosswater Canyon Policy provides "Earnings and Expenses" coverage in part as follows:

> **We** cover the actual loss of **your** normal earnings that you sustain, including but not limited to, **your tuition earnings**, **camp earnings**, and **rental earnings/value**. This coverage includes, but is not limited to, the actual loss that **you** sustain of **your** payroll and other continuing expenses that **you** normally incur during the course of your operations . . . This coverage does not apply to loss of **your donation income**.

(*Id.*, Form BCP-71 (1.1), "Coverage Options").

28. The Crosswater Canyon Policy also specifically covers "Donation Income" in part as follows:

> **We** cover the actual loss of **your donation income. We** cover only the **donation income** that is lost during the **restoration period.** This coverage does not apply to loss of **your** earnings and expenses.

(*Id.*)

29. In addition, the Crosswater Canyon Policy provides "Extra Expense" coverage, in part as follows:

> **We** cover the necessary extra expenses that **you** incur to resume or continue **your** operations as nearly as practicable. **We** cover only the extra expenses that are necessary during the **restoration period**.

(*Id.*)

### D. The Kentucky Orders and Plaintiffs' Claims Under the Insurance Policies

30. Beginning in March 2020, nearly every state in the United States issued orders either shutting down or restricting, to various degrees, the ability of certain businesses to operate as they had before the pandemic. *See, e.g.*, THE NEW YORK TIMES, *See Reopening Plans and Mask Mandates for All 50 States*, https://www.nytimes.com/interactive/2020/us/states-reopen-map-coronavirus.html (accessed June 1, 2022).

8

31. The state of Kentucky issued numerous orders that impacted Plaintiffs' ability to operate its businesses (the "Kentucky Orders").

32. For example, on or around March 17, 2020, the state of Kentucky expanded Executive Order 2020-215, which required that, by 5:00 p.m. on March 18, 2020, all public-facing businesses that encourage public congregation or, that by the nature of the service to the public, cannot comply with CDC guidelines concerning social distancing shall cease all in-person operations.

33. As another example, on or around March 25, 2020, the state of Kentucky issued Executive Order 2020-257, allowing only life-sustaining businesses to remain open, and demanding all businesses that are not life-sustaining to cease operations by 8:00 p.m. on March 26, 2020, except as needed to conduct Minimum Basic Operations as defined in the order.

34. As a direct result of the COVID-19 pandemic and the Kentucky Orders, Plaintiffs were forced to suspend operations at its properties. It closed its businesses to the public on March 17, 2020.

35. In particular, AIG was forced to close the Creation Museum and all related operations, and visitors were barred from the premises. Similarly, Crosswater Canyon was forced to close the Ark Encounter and all related operations, and visitors were barred from the premises.

36. In addition, upon information and belief, staff and employees of Plaintiffs were exposed to and/or contracted COVID-19 during the policy period of the AIG Policy and the Crosswater Canyon Policy

37. As a result, Plaintiffs incurred a significant loss of earnings and donations, as well as extra expenses directly resulting from the COVID-19 pandemic and/or the Kentucky Orders.

38. On or about March 18, 2020, AIG submitted a claim to Defendants under the AIG Policy, seeking coverage for the interruption of its business operations, including the shutdown of the Creation Museum.

39. On or about November 2, 2020, AIG received correspondence from Defendants that they were denying AIG's claim.[3]

40. On or about March 18, 2020, Crosswater Canyon submitted a claim to Defendants, similarly seeking coverage for the interruption of its business operations, including the shutdown of the Ark Encounter.

41. On or about March 23, 2020, Crosswater Canyon received correspondence from Defendants that they were denying Crosswater Canyon's claim.[4]

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – The AIG Policy)

42. Plaintiffs incorporate by reference, as if fully rewritten herein, all the preceding paragraphs of this Complaint.

43. Defendants issued the AIG Policy to AIG.

44. The AIG Policy is a valid and binding contract, including offer, acceptance, and consideration.

45. The AIG Policy provides "Earnings and Donations and Extra Expense Coverage" to AIG, among other benefits.

46. AIG has performed all conditions precedent to the AIG Policy, if any, and/or are excused from the conditions precedent.

---

[3] A true and accurate copy of the coverage-denial correspondence is attached as **Exhibit C**.
[4] A true and accurate copy of the coverage-denial correspondence is attached as **Exhibit D**.

47. Defendants failed and refused to provide "Earnings and Donations and Extra Expense Coverage" or other applicable coverage to AIG, constituting a breach of contract.

48. As a direct and proximate result of Defendants' breaches of contract, AIG has suffered damages in an amount in excess of $25,000, to be proven at the trial of this matter.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract – The Crosswater Canyon Policy)**

49. Plaintiffs incorporate by reference, as if fully rewritten herein, all the preceding paragraphs of this Complaint.

50. Defendants issued the Crosswater Canyon Policy to Crosswater Canyon.

51. The Crosswater Canyon Policy is a valid and binding contract, including offer, acceptance, and consideration.

52. The Crosswater Canyon Policy provides a "Earnings, Extra Expense, and Donations Coverage" to Crosswater Canyon, among other benefits.

53. Crosswater Canyon has performed all conditions precedent to the Crosswater Canyon Policy, if any, and/or are excused from the conditions precedent.

54. Defendants failed and refused to provide "Earnings, Extra Expense, and Donations Coverage" or other applicable coverage to Crosswater Canyon, constituting a breach of contract.

55. As a direct and proximate result of Defendants' breaches of contract, Crosswater Canyon has suffered damages in an amount in excess of $25,000, to be proven at the trial of this matter.

**THIRD CLAIM FOR RELIEF**
**(Declaratory Judgment – The AIG Policy)**

56. Plaintiffs incorporate by reference, as if fully rewritten herein, all the preceding paragraphs of this Complaint.

57. There exists a real and justiciable controversy which is ripe for determination regarding the parties' rights and obligations under the AIG Policy, including but not limited to a dispute as to whether AIG is entitled to "Earnings and Donations and Extra Expense Coverage" and/or other benefits under the AIG Policy.

58. AIG has no adequate remedy at law.

59. AIG is entitled to a determination of the parties' rights and obligations under the AIG Policy, including but not limited to a declaration that Plaintiffs are entitled to "Earnings and Donations and Extra Expense Coverage" and/or other benefits under the AIG Policy.

**FOURTH CLAIM FOR RELIEF**
**(Declaratory Judgment – The Crosswater Canyon Policy)**

60. Plaintiffs incorporate by reference, as if fully rewritten herein, all the preceding paragraphs of this Complaint.

61. There exists a real and justiciable controversy which is ripe for determination regarding the parties' rights and obligations under the Crosswater Canyon Policy, including but not limited to a dispute as to whether Crosswater Canyon is entitled to "Earnings, Extra Expense, and Donations Coverage" and/or other benefits under the Crosswater Canyon Policy.

62. Crosswater Canyon has no adequate remedy at law.

63. Crosswater Canyon is entitled to a determination of the parties' rights and obligations under the Crosswater Canyon Policy, including but not limited to a declaration that

Plaintiffs are entitled to "Earnings, Extra Expense, and Donations Coverage" and/or other benefits under the Crosswater Canyon Policy.

### FIFTH CLAIM FOR RELIEF
(Common Law Bad Faith – The AIG Policy)

64. Plaintiffs incorporate by reference, as if fully rewritten herein, all the preceding paragraphs of this Complaint.

65. Defendants owed a duty of good faith and fair dealing to AIG at all relevant times, and Defendants continue to owe AIG such a duty.

66. Defendants' duty of good faith and fair dealing includes the obligation not to place Defendants' own interests ahead of AIG's interests as an insured.

67. AIG has complied with each and every obligation and condition precedent imposed on it under the AIG Policy.

68. AIG is entitled to full coverage under the terms of the AIG Policy.

69. There was, and is, no reasonable basis in law or fact for Defendants' failure and refusal to provide coverage for AIG's covered loss.

70. Defendants' coverage position was not, and is not, legitimate, and Defendants' use of an illegitimate coverage position to avoid or delay full payment for AIG's covered loss is improper and constitutes bad faith.

71. Defendants either know that there is no reasonable basis for Defendants' coverage position or Defendants have acted with reckless disregard as to whether a reasonable basis exists, and therefore, Defendants' actions are outrageous.

72. As a direct and proximate cause of Defendants' conduct and bad faith, AIG has and will continue to suffer substantial damages, in an amount in excess of $25,000, to be proven at the trial of this matter.

73. At all times relevant hereto, Defendants acted with oppression, fraud, and malice towards AIG, entitling AIG to an award of punitive damages.

## SIXTH CLAIM FOR RELIEF
### (Common Law Bad Faith – The Crosswater Canyon Policy)

74. Plaintiffs incorporate by reference, as if fully rewritten herein, all the preceding paragraphs of this Complaint.

75. Defendants owed a duty of good faith and fair dealing to Crosswater Canyon at all relevant times, and Defendants continue to owe Crosswater Canyon such a duty.

76. Defendants' duty of good faith and fair dealing includes the obligation not to place Defendants' own interests ahead of Crosswater Canyon's interests as an insured.

77. Crosswater Canyon has complied with each and every obligation and condition precedent imposed on it under the Crosswater Canyon Policy.

78. Crosswater Canyon is entitled to full coverage under the terms of the Crosswater Canyon Policy.

79. There was, and is, no reasonable basis in law or fact for Defendants' failure and refusal to provide coverage for Crosswater Canyon's covered loss.

80. Defendants' coverage position was not, and is not, legitimate, and its use of an illegitimate coverage position to avoid or delay full payment for Crosswater Canyon's covered loss is improper and constitutes bad faith.

81. Defendants either know that there is no reasonable basis for Defendants' coverage position or Defendants have acted with reckless disregard as to whether a reasonable basis exists, and therefore, Defendants' actions are outrageous.

82. As a direct and proximate cause of Defendants' conduct and bad faith, Crosswater Canyon has and will continue to suffer substantial damages, in an amount in excess of $25,000, to be proven at the trial of this matter.

83. At all times relevant hereto, Defendants acted with oppression, fraud, and malice towards Crosswater Canyon, entitling Crosswater Canyon to an award of punitive damages.

### SEVENTH CLAIM FOR RELIEF
**(Bad Faith/Violation of the Kentucky Consumer Protection Act – The AIG Policy)**

84. Plaintiffs incorporate by reference each and every paragraph contained in this Complaint, as if fully restated herein.

85. As detailed above and particularly in Plaintiffs' Fifth Claim for Relief, Defendants have violated the provisions of the Kentucky Consumer Protection Act by engaging in unfair, misleading, or deceptive acts practices with regard to Defendants' denial of AIG's claim under the AIG Policy.

86. As a direct and proximate result of Defendants' violations of the Kentucky Consumer Protection Act, AIG has and will continue to suffer substantial damages, in an amount in excess of $25,000, to be proven at the trial of this matter.

87. Pursuant to KRS § 367.220(3), AIG is entitled to recover its attorneys' fees and costs.

88. At all times relevant hereto, Defendants acted with oppression, fraud, and malice towards AIG, entitling AIG to an award of punitive damages.

### EIGHTH CLAIM FOR RELIEF
**(Bad Faith/Violation of the Kentucky Consumer Protection Act –
The Crosswater Canyon Policy)**

89. Plaintiffs incorporate by reference each and every paragraph contained in this Complaint, as if fully restated herein.

15

90. As detailed above and particularly in Plaintiffs' Sixth Claim for Relief, Defendants have violated the provisions of the Kentucky Consumer Protection Act by engaging in unfair, misleading, or deceptive acts practices with regard to Defendants' denial of Crosswater Canyon's claim under the Crosswater Canyon Policy.

91. As a direct and proximate result of Defendants' violations of the Kentucky Consumer Protection Act, Crosswater Canyon has and will continue to suffer substantial damages, in an amount in excess of $25,000, to be proven at the trial of this matter.

92. Pursuant to KRS § 367.220(3), Crosswater Canyon is entitled to recover its attorneys' fees and costs.

93. At all times relevant hereto, Defendants acted with oppression, fraud, and malice towards Crosswater Canyon, entitling Crosswater Canyon to an award of punitive damages.

### NINTH CLAIM FOR RELIEF
**(Violation of the Kentucky Unfair Claims Settlement Practices Act – The AIG Policy)**

94. Plaintiffs incorporate by reference each and every paragraph contained in this Complaint, as if fully restated herein.

95. As detailed above, Defendants have violated the provisions of the Kentucky Unfair Claims Settlement Practices Act, KRS § 304.12-230, by: misrepresenting pertinent insurance policy provisions relating to the coverages at issue; failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the insurance policy; refusing to pay claims without conducting a reasonable investigation based upon all available information; failing to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; compelling Plaintiffs to institute litigation to recover the amounts due under the AIG Policy; failing to promptly settle claims where liability has become reasonably clear; and failing to promptly provide a reasonable

explanation of the basis in the AIG Policy or in relation to the facts or applicable law for denial of a claim.

96. As a direct and proximate result of Defendants' violations of the Kentucky Unfair Claims Settlement Practices Act, Plaintiffs have and will continue to suffer substantial damages, in an amount in excess of $25,000, to be proven at the trial of this matter.

97. Pursuant to KRS § 446.070 and KRS § 304.12-235, AIG is entitled to recover its attorneys' fees and costs.

98. At all times relevant hereto, Defendants acted with oppression, fraud, and malice towards AIG, entitling AIG to an award of punitive damages.

**TENTH CLAIM FOR RELIEF**
**(Violation of the Kentucky Unfair Claims Settlement Practices Act –**
**The Crosswater Canyon Policy)**

99. Plaintiffs incorporate by reference each and every paragraph contained in this Complaint, as if fully restated herein.

100. As detailed above, Defendants have violated the provisions of the Kentucky Unfair Claims Settlement Practices Act, KRS § 304.12-230, by: misrepresenting pertinent insurance policy provisions relating to the coverages at issue; failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the insurance policy; refusing to pay claims without conducting a reasonable investigation based upon all available information; failing to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; compelling Plaintiffs to institute litigation to recover the amounts due under the AIG Policy; failing to promptly settle claims where liability has become reasonably clear; and failing to promptly provide a reasonable

explanation of the basis in the AIG Policy or in relation to the facts or applicable law for denial of a claim.

101. As a direct and proximate result of Defendants' violations of the Kentucky Unfair Claims Settlement Practices Act, Crosswater Canyon has and will continue to suffer substantial damages, in an amount in excess of $25,000, to be proven at the trial of this matter.

102. Pursuant to KRS § 446.070 and KRS § 304.12-235, Crosswater Canyon is entitled to recover its attorneys' fees and costs.

103. At all times relevant hereto, Defendants acted with oppression, fraud, and malice towards Crosswater Canyon, entitling Crosswater Canyon to an award of punitive damages.

WHEREFORE, Plaintiffs Answers in Genesis, Inc. and Crosswater Canyon, Inc. demand judgment against Defendants as follows:

a. On Count One, for compensatory damages in an amount in excess of $75,000, to be proven at the trial of this matter;

b. On Count Two, for compensatory damages in an amount in excess of $75,000, to be proven at the trial of this matter;

c. On Count Three, for an Order declaring the rights and obligations of the parties under the Policy, including without limitation an order declaring that AIG is entitled to "Earnings and Donations and Extra Expense Coverage" and/or other benefits under the AIG Policy;

d. On Count Four, for an Order declaring the rights and obligations of the parties under the Crosswater Canyon Policy, including without limitation an order declaring that Crosswater Canyon is entitled to "Earnings, Extra Expense, and Donations Coverage" and/or other benefits under the Crosswater Canyon Policy;

e. On Count Five, for compensatory damages in an amount in excess of $75,000, to be proven at the trial of this matter, punitive damages, and attorneys' fees and costs;

f. On Count Six, for compensatory damages in an amount in excess of $75,000, to be proven at the trial of this matter, punitive damages, and attorneys' fees and costs;

g. On Count Seven, for compensatory damages in an amount in excess of $75,000, to be proven at the trial of this matter, punitive damages, and attorneys' fees and costs;

h. On Count Eight, for compensatory damages in an amount in excess of $75,000, to be proven at the trial of this matter, punitive damages, and attorneys' fees and costs;

i. On Count Nine, for compensatory damages in an amount in excess of $75,000, to be proven at the trial of this matter, punitive damages, and attorneys' fees and costs;

j. On Count Ten, for compensatory damages in an amount in excess of $75,000, to be proven at the trial of this matter, punitive damages, and attorneys' fees and costs;

k. On all Counts, for interest, costs, and attorneys' fees as allowed by law, and such other and further relief as may be deemed just and equitable.

Respectfully submitted,

*/s/ Steven C. Coffaro*
Steven C. Coffaro (KBA 86202)
Anthony M. Verticchio (KBA 92716)
Amanda Brooke Burton (KBA 96213)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6400
Fax: (513) 579-6457
steve.coffaro@kmklaw.com
averticchio@kmklaw.com
aburton@kmklaw.com

*Attorneys for Plaintiffs Answers in Genesis, Inc. and Crosswater Canyon, Inc.*

11950085.1